## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIMOTHY SOLEK,<br>    *Plaintiff*,<br><br>      v.<br><br>DR. NAQVI, *et al.*,<br>    *Defendants*. | No. 3:16-cv-947 (JAM) |

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Timothy Solek is a prisoner in the custody of the Connecticut Department of

Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983.

Plaintiff alleges that his rights were violated when he was housed with a cellmate who later

attacked him, that his due process rights were violated at a disciplinary hearing stemming from

the attack, and that he received constitutionally inadequate medical care for injuries he received

from the attack. For the reasons set forth below, I conclude that the complaint should be served

on one of the seven defendants; the remainder of plaintiff's claims are dismissed pursuant to 28

U.S.C. § 1915A.

### BACKGROUND

Plaintiff names seven defendants: Dr. Naqvi, Correctional Treatment Officer Massoia,

Lieutenant Danek, Nurse Jane Doe, Lieutenant Richardson, District Administrator Angel Quiros,

and Medical Practitioner Terp. Defendants Naqvi and Doe are named in their individual and

official capacities. The remaining defendants are named in their individual capacities only.

The following allegations from plaintiff's complaint are accepted as true for purposes of

the Court's initial review. On June 6, 2014, plaintiff was assigned to a cell with an African-

American cellmate. Plaintiff wrote to defendant Massoia stating that he was frightened to live

with anyone who was not white and asked if a specific inmate, who is white, could be moved into his cell. Instead, defendant Massoia moved plaintiff to a different cell. His new cellmate, Nicholas Martin, was African-American and, according to plaintiff, a "child molester." Plaintiff made several follow-up requests to defendant Massoia, informing him that he was not getting along with his cellmate and that he wanted to be moved. Massoia did nothing.

Beginning June 23, 2014, the facility was on a week-long lockdown. Inmates were required to eat their meals in their cells. On June 24, 2014, plaintiff had to use the toilet during dinner, at approximately 4:30 p.m. His cellmate Martin became upset, and the two got into an argument. During the argument, Martin struck plaintiff in the face with a sock filled with batteries, soap, and deodorant. Martin then dropped the sock into the toilet and called for help from the officers serving dinner. Officer Rivenburgh responded and told the two men to stop fighting or a chemical agent would be deployed. When they did not stop fighting, Officer Rivenburgh called a "code blue," summoning assistance because of an inmate fight. After assistance arrived, Officer Rivenburgh sprayed a chemical agent onto the men's faces to "gain [their] compliance." Officer Canfield began video-recording the incident at 4:43 p.m.

Defendant Danek escorted plaintiff to the medical unit to have his wounds treated. On the way, plaintiff informed a lieutenant that Martin had assaulted him with a sock filled with batteries. Plaintiff overheard someone say that the cell should be treated as a crime scene and that the state police should be called. Martin admitted to the state police and correctional staff that he and plaintiff were not getting along and that he had assaulted plaintiff with a sock filled with batteries.

At the medical unit, plaintiff was cleaned of the chemical agent, and defendant Doe treated his cuts. She did not personally treat his eye injury. Plaintiff believes that defendant

Danek failed to inform defendant Doe that he had been assaulted with a sock filled with batteries. Defendant Doe considered plaintiff's eye injury serious enough to call defendant Naqvi, the on-call doctor. Defendant Naqvi prescribed an ice pack and neurological checks every four hours for twenty-four hours; he did not order an x-ray or MRI. Plaintiff was placed on suicide watch after he told mental health staff that he was afraid to be in a cell with another inmate and said he would kill himself if he were required to share a cell.

The night of the assault, plaintiff received a disciplinary report for fighting. On June 25, 2014, plaintiff pled not guilty and selected defendant Massoia as his advocate. The next day, Massoia told plaintiff that he would review everything and get back to plaintiff. He did not do so. On July 1, 2014, plaintiff attended the disciplinary hearing. Defendant Massoia did not appear. Plaintiff requested a continuance. The hearing officer, defendant Richardson, denied the request and found plaintiff guilty of the charge. On July 3, 2014, plaintiff was transferred to Corrigan Correctional Center. Defendant Quiros denied plaintiff's disciplinary appeal.

Although he suffered severe pain, plaintiff received no pain medication or additional testing for his eye injury during the nine days from the incident through his transfer. On July 26, 2014, a nurse noticed a hard nodule above plaintiff's left eye. On July 30, 2014, an APRN determined that the nodule was a cyst and ordered x-rays. The x-rays, taken on July 31, 2014, showed no left orbital rim fracture and did not indicate the composition of the nodule.

On September 19, 2014, plaintiff filed a grievance against defendants Naqvi and Doe for failing to treat his eye for nine days. On October 20, 2014, defendant Terp reviewed the grievance and stated that the Department of Correction would not acknowledge any failure of medical care and would not order an MRI because the test would be of low diagnostic value. On October 23, 2014, the APRN told plaintiff that the Utilization Review Committee had denied

3

further treatment, but ordered him x-rays. In July 2015, plaintiff was transferred back to MacDougall Correctional Institution.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Plaintiff brings claims of  (1) deliberate indifference against defendant Massoia for placing him in a cell with an African-American inmate who ultimately assaulted him; (2) denial of due process by defendants Richardson, Massoia, and Quiros regarding the disciplinary hearing; and (3) deliberate indifference against defendants Naqvi, Terp, and Doe for failing to properly treat his injury and causing him pain. He also seeks injunctive relief in the form of medical care, pain medication, the removal of his disciplinary ticket, and a court order for a single-cell housing assignment.

4

### *Deliberate Indifference to Safety*

The Court construes plaintiff's claim against defendant Massoia regarding his cell assignment as a claim for deliberate indifference to his safety in violation of the Eighth Amendment. To state a claim for deliberate indifference to safety, a prisoner must show both that (1) "he [was] incarcerated under conditions posing a substantial risk of serious harm," and (2) "defendant prison officials possessed sufficient culpable intent." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). A prison official acts with sufficient culpable intent "if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Ibid.*; *see also Ziemba v. Lajoie*, 2016 WL 5395265 (D. Conn. 2016) (denying summary judgment against claim of deliberate indifference based on evidence that plaintiff's assigned cellmate had recently tried to kill his cellmate and vowed to kill next cellmate).

Plaintiff has not pled facts that suggest that defendant Massoia had knowledge of a substantial risk of serious harm by placing him in a cell with Martin. Plaintiff alleges that he told defendant Massoia that he was afraid of being housed with non-white inmates and later, that he told defendant Massoia that he and Martin were not getting along. Plaintiff does not allege any specific facts to indicate that Martin—or non-white inmates in general—posed a risk to his safety. The facts pled indicate only that plaintiff was generally afraid of non-white inmates. Such a general and biased racial-stereotype fear is not evidence of a substantial risk of serious harm. No other substantial basis would support an inference that Massoia acted with deliberate indifference to plaintiff's rights. Massoia's transfer of plaintiff from a cell with an African-American inmate to a cell with a different African-American inmate—even if that inmate ended

up assaulting him—does not constitute deliberate indifference in violation of plaintiff's Eighth Amendment rights. Plaintiff's claim against defendant Massoia for deliberate indifference to safety is therefore dismissed.

### Denial of Due Process

To state a claim for denial of due process in connection with prison disciplinary hearings, plaintiff must show that he had a protected liberty interest and that he was denied that interest without being afforded due process of law. A plaintiff has a protected liberty interest only if the state has created a liberty interest via a statute or regulation and deprivation of that interest has caused him to suffer an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To make this determination, the Court must examine the actual punishment received. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). The Court considers both the conditions and duration of the punishment. *Ibid.*

Plaintiff does not specify what punishment he received for the disciplinary infraction. As a result, the Court cannot determine whether plaintiff suffered an atypical and significant hardship to support a claim for denial of due process. The due process claim against defendants Massoia, Richardson, and Quiros is therefore dismissed, without prejudice to refiling if plaintiff is able to allege that he suffered an atypical and significant hardship, as well as alleging the other elements required to state a claim for denial of due process in connection with a prison disciplinary hearing.[1]

---

[1] In addition to establishing that he had a protected liberty interest, plaintiff will need to establish that he was denied that interest without being afforded due process of law. The procedural safeguards to which plaintiff is entitled before being deprived of a constitutionally significant liberty interest are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional

### *Deliberate Indifference to Serious Medical Need*

To state a claim for deliberate indifference to a serious medical need, plaintiff must show both that his medical need was serious and that defendants acted with sufficiently culpable states of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Injuries sustained from being hit in the head with a sock containing a hard object can be presumed to be a serious medical need. *See Lewis v. Cooper*, 771 F.2d 334, 337 (7th Cir. 1985) (allegation of bleeding from nose, mouth and back of head after being hit in the head with a sock containing a hard object was sufficient to infer serious medical need). The Court will assume, for purposes of this ruling, that plaintiff had a serious medical need and focus on whether the facts as pleaded plausibly establish that any of the defendants acted with a culpable state of mind.

Plaintiff was taken to the medical unit and examined by defendant Doe, a nurse. Although plaintiff alleges that defendant Doe failed to treat his eye injury, he also alleges that she determined the eye injury was sufficiently serious to warrant examination by Dr. Naqvi. Summoning the on-call doctor to treat a potentially serious injury does not constitute deliberate indifference to a serious medical need. The claim against defendant Doe is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

---

institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Plaintiff's allegation that defendants violated Administrative Directive 9.5 by failing provide him with an advocate, *see* Doc. #1 at 13, is insufficient on its own to state a due process claim. *See Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011) ("failure to comply with a state law or administrative directive does not by itself establish a violation of § 1983"); *Sira*, 380 F.3d at 69 (no due process right to counsel or confrontation at prison disciplinary hearing).

Plaintiff faults Dr. Naqvi for failing to order an x-ray or MRI and failing to prescribe pain medication. He alleges that he experienced severe pain for nine days until his transfer to Corrigan Correctional Institution. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Nevertheless, "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Ibid.* Moreover, the allegation that defendant Naqvi failed to provide medication for severe pain may support a claim for deliberate indifference to a serious medical need. *See ibid.* (ignoring severe pain can constitute deliberate indifference). Plaintiff's claims against Dr. Naqvi will therefore be allowed to proceed.

This holding applies to plaintiff's claims against defendant Naqvi in his individual capacity, as well as plaintiff's claims against defendant Naqvi in his official capacity to the extent that plaintiff seeks injunctive relief. To the extent that plaintiff seeks monetary damages against Dr. Naqvi in his official capacity, however, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 105 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Accordingly, plaintiff's claim for monetary damages against defendant Naqvi in his official capacity is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Defendant Terp denied plaintiff's grievance regarding the medical treatment provided by defendants Doe and Naqvi and commented that the Department of Correction would not order an MRI because it would be of low diagnostic value. Plaintiff contends that defendant Terp failed to comply with Department of Correction policy because he did not schedule an appointment with a physician to discuss further treatment. The failure to follow prison directives or procedures is not a constitutional violation. *See Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011) ("failure to

8

comply with a state law or administrative directive does not by itself establish a violation of § 1983"). In addition, plaintiff alleges that three days after defendant Terp denied the grievance, a nurse told him that the Utilization Review Committee had denied further testing. In light of the Utilization Review Committee decision, the Court can discern no injury caused by defendant Terp's actions in this case. The claim against defendant Terp is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff names Lieutenant Danek as a defendant but does not reference Danek in his statement of claims. According to plaintiff, defendant Danek escorted him to the medical unit, and failed to inform defendant Doe that plaintiff had been struck with a sock containing batteries. This allegation does not support a claim against defendant Danek for violation of plaintiff's constitutional rights. Plaintiff does not allege that he was unable to tell defendant Doe that he had been hit with a sock containing batteries or that he did not do so. Further, plaintiff alleges that defendant Doe was aware of the eye injury and summoned defendant Naqvi to treat it. The Court cannot discern any constitutional violation as a result of the allegations against defendant Danek. Any claims against defendant Danek are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff seeks appointment of *pro bono* counsel in this action pursuant to 28 U.S.C. § 1915. The Second Circuit has repeatedly cautioned the district courts against the routine appointment of counsel. *See, e.g.*, *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). The Second Circuit has also made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173 (2d Cir. 1989)).

In his motion, plaintiff states that he contacted two law firms seeking representation. He states that Inmates' Legal Aid Program, the organization contracted to provide legal assistance to Connecticut inmates, will not represent him. Although the Program attorneys will not appear on his behalf, they will provide legal assistance. Plaintiff has not shown that this assistance is insufficient at this stage of the case. Accordingly, appointment of counsel is not warranted at this time. Plaintiff's motion for appointment of counsel is denied without prejudice.

CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1)      The complaint will proceed on the claim against defendant Naqvi for deliberate indifference to a serious medical need. The deliberate indifference to safety claim against defendant Massoia; the denial of due process claim against defendants Richardson, Massoia and Quiros; the deliberate indifference to medical needs claims against defendants Doe and Terp; and any claims against defendant Danek are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). If plaintiff wishes to replead some or all of these claims, he may file an amended complaint within thirty (30) days of the date of this order. Any amended complaint should include all of plaintiff's claims that he wishes to pursue (*e.g.,* the amended complaint should also include any claim against defendant Naqvi for deliberate indifference to a serious medical need).

(2)      **The Clerk shall** verify the current work address of defendant Naqvi with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be

10

required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendant Naqvi in his official capacity at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)      Defendant Naqvi shall file his response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date of the summons. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that the plaintiff MUST notify the court. Failure to do so can

11

result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10)     Plaintiff's motion for appointment of counsel (**Doc. # 3**) is **DENIED** without prejudice.

It is so ordered.

Dated at New Haven this 28th day of November 2016.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge